The State of Ohio, Appellee, *v.* Winters, Appellant.

326

(No. 38500—Decided June 23, 1965.)

Mr. *Richard O. Harris*, prosecuting attorney, for appellee.
Mr. *Henry Clay Scott*, for appellant.

HERBERT, J. Appellant assigns a number of errors in this appeal. He alleges that the indictment in this cause is insufficient under law to charge an offense, that he was denied a speedy trial, that the Court of Appeals for Franklin County erred in remanding appellant for a retrial, that he was denied the effective assistance of counsel, and that the trial court erred in informing the jury at the second trial of certain facts. Our disposition of this cause requires that only certain of the above errors be considered.

Appellant alleges that the indictment returned against him is insufficient under law to charge an offense. Appellant's motion challenging the sufficiency of the indictment was overruled by the trial court.

The indictment returned by the grand jury in this cause is as follows:

"The jurors of the grand jury * * * do find and present that Harry F. Winters late of said county [Champaign] was indicted in the October term of 1956 of this Court of Common Pleas of said Champaign County, Ohio, on the charges of armed robbery, robbery and breaking and entering in the night season, and in the same term on the 2nd day of January, 1957, pleaded guilty to the said charge of armed robbery;

"That on the 2nd day of January, 1957, in the Court of Common Pleas of Champaign County, Ohio, the said Harry F. Winters pleaded guilty to the said crime of robbery;

328

"That on the 2nd day of January, 1957, in the Court of Common Pleas of Champaign County, Ohio, the said Harry F. Winters pleaded guilty to the said crime of breaking and entering in the night season;

"That the said Harry F. Winters on the 19th day of January, 1938, in the Court of Common Pleas of Logan County, Ohio, was convicted of the crime of robbery;

"Contrary to Section 2961.11 of the Revised Code, and against the peace and dignity of the state of Ohio.
"s/s T. H. Eshman
"Prosecuting Attorney."

In the simplest terms, the indictment alleges that on January 2, 1957, appellant pleaded guilty to three criminal charges of armed robbery, robbery, and breaking and entering in the night season; and that on January 19, 1938, appellant was convicted of the crime of robbery.

The indictment purports to charge a violation of Section 2961.11, Revised Code, which provides as follows:

"A person convicted of arson; burning property to defraud an insurer; robbery; pickpocketing; burglary; burglary of an inhabited dwelling; murder in the second degree; voluntary manslaughter; assault with intent to kill, rob, or rape, cutting, stabbing, or shooting with intent to kill or wound; forcible rape or rape of a child under twelve years of age; incest; forgery; grand larceny; stealing a motor vehicle; receiving stolen goods of the value of more than thirty-five dollars; perjury; kidnapping; child-stealing; who has been two times previously convicted of any of these felonies separately prosecuted and tried therefor, either in this state or elsewhere, shall be adjudged an habitual criminal and shall be sentenced by the court to a term of imprisonment equal to the maximum statutory penalty for such offense. Any of such convictions which result from or are connected with the same transaction, or result from offenses committed at the same time, shall be counted for the purposes of this section as one conviction."

In simplest terms, the above Code section provides that any person who has been previously convicted three times for certain named felonies shall be adjuged an habitual criminal, subject to two conditions: the convictions must be separately prose-

cuted and tried; and any of such convictions which result from or are connected with the same transaction or result from offenses committed at the same time shall be counted as one conviction.

Comparing the indictment in the instant case to the habitual-criminal statute, we think that the indictment is fatally defective in several respects.

An examination of the indictment reveals that it charges the crimes of "breaking and entering in the night season" and "armed robbery." These crimes are not listed in the habitual-criminal statute.

It is at once apparent from an examination of the legislative history of the habitual-criminal statutes that the General Assembly intended to enumerate specific crimes only as being within the purview of the habitual-criminal statutes.

The original Habitual Criminal Act of May 4, 1885 (82 Ohio Laws 236, 237), did not enumerate specific crimes. Rather, an habitual criminal was defined as any person who had been previously convicted, sentenced and imprisoned for any three *felonies*. This act was repealed in 1902. See 95 Ohio Laws 410.

The present Habitual Criminal Act, enacted in 1929 (113 Ohio Laws 40), enumerates *specific* crimes. Only convictions for these crimes may serve as a basis in a habitual-criminal prosecution.

The high degree of specificity intended by the General Assembly is demonstrated by the amendments offered and incorporated in the 1929 Habitual Criminal Bill. The bill, as originally offered, enumerated the crime of "larceny." It was amended to read, "grand larceny," only thereby excluding the crimes of petit larceny and larceny by trick. See Sections 2907.20 and 2907.21, Revised Code, 113 Ohio House Journal 184 (1929). Also the original bill did not enumerate any crimes involving homicides. It was amended to include the crime of "murder of any degree" (113 Ohio House Journal 184 [1929]) and then was further amended to read, "murder of the second degree" only (113 Ohio House Journal 404 [1929]), thereby excluding eight other types of homicides. See Sections 2901.01, 2901.02, 2901.03, 2901.04, 2901.06, 2901.07, 2901.09, 2901.10 and 2901.28, Revised Code.

We do not think that the allegation of "breaking and entering" as found in the indictment is equivalent to an allegation of "burglary" or "burglary of an inhabited dwelling," as enumerated in the habitual-criminal statute.

Moreover, we are unable to ascertain what section of the criminal code the prosecutor intended in alleging a "breaking and entering in the night season." All the following sections of the Revised Code contain the elements of "breaking," "entering," and "night season." Section 2907.09 (burglary of an inhabited dwelling); Section 2907.10 (burglary of an uninhabited dwelling); Section 2907.16 (entry in the night season and committing personal violence).

Nor do we believe that the General Assembly intended to include the crime of "armed robbery" within the Habitual Criminal Act. Both "robbery" and "armed robbery" were prohibited by the General Code (now Sections 2901.12 and 2901.-13, Revised Code) at the time the General Assembly passed the present Habitual Criminal Act. And the General Assembly expressly refrained from making every felony serve as a basis for a conviction as a habitual criminal, the position it had adopted in the original Habitual Criminal Act of 1885, repealed in 1902. In rejecting eight types of homicides, *supra*, it is clear that the General Assembly intended to enumerate a class of crimes less serious in nature and punishment. We think that the crime of "armed robbery," prescribing a minimum punishment ten times greater than the punishment for "robbery" (see Sections 2901.12 and 2901.13, Revised Code) is excluded from the Habitual Criminal Act.

The issue of the sufficiency of an indictment in regards to charging a crime was thoroughly analyzed by this court in *State v. Cimpritz* (1953), 158 Ohio St. 490. The syllabus in that case, in pertinent part, is as follows:

"1. In Ohio, all crimes are statutory.

"2. The elements necessary to constitute a crime must be gathered wholly from the statute.

"3. If any material element or ingredient of an offense, as defined by statute, is omitted from the indictment, such omission is fatal to the validity of the indictment.

"4. Sections 13437-28 and 13437-29, General Code [Sections

2941.29 and 2941.30, Revised Code] * * * authorizing correction in the form or substance of an indictment, apply to an indictment which as drawn is sufficient to charge an offense, but they do not contemplate the making of a good indictment out of one which states no offense. * * *''

Judge Zimmerman, speaking for the six judges who considered the case, succinctly reviewed the previous decisions of this court. It was the judgment of this court therein that a charge in an indictment that the accused "did unlawfully attempt to break and enter" was not equivalent to "maliciously and forcibly breaks and enters," as stated in Section 12438, General Code, now Section 2907.10, Revised Code, and, therefore, did not state an offense.

We think that the same conclusion is warranted more so in this case. The indictment fails to state an offense under the habitual-criminal statutes.

The indictment is also defective in a second respect. In *Blackburn* v. *State* (1893), 50 Ohio St. 428, paragraph two of the syllabus provides, in pertinent part, as follows:

"* * * *the indictment should allege that the defendant had been previously twice convicted, sentenced and imprisoned,* in some penal institution for felonies, describing each separately * * *." (Emphasis added.)

At the time of the *Blackburn* decision, this court had under consideration the Habitual Criminal Act of May 4, 1885 (82 Ohio Laws 236), which provided, in pertinent part, as follows:

"Every person who, after having been twice *convicted, sentenced and imprisoned* in some penal institution for felony * * * shall be convicted, sentenced and imprisoned in the Ohio Penitentiary for felony hereafter committed, shall be deemed and taken to be an habitual criminal * * *." (Emphasis added.)

The Habitual Criminal Act of 1885 was repealed in 1902. See 95 Ohio Laws 410. It is readily apparent however that the principles of law relative to the sufficiency of an indictment charging that a person is an habitual criminal are applicable today. The only exception is that, under the present Habitual Criminal Act, the indictment need not allege sentencing and imprisonment. See *Giordano* v. *Alvis, Warden* (Ohio App. 1957), 76 Ohio Law Abs 554.

An examination of various criminal statutes which have provided increased punishment upon a second conviction indicates that the General Assembly always considered a first conviction essential. See 86 Ohio Laws 261 (1889); 90 Ohio Laws 199 (1893); 113 Ohio Laws 40 (1929). Past judicial decisions also demand that there be in existence prior *convictions*. In *In re Arcieri* (1957), 167 Ohio St. 37, the per curiam opinion reads as follows:

"* * * the record discloses that petitioner's former *convictions* of four separate and distinct felonies of the kind specified in the Habitual Criminal Act, each felony committed at a different time; the subject of a separate prosecution and not connected in any way with the same transaction, properly constituted the basis for his conviction under the Habitual Criminal Act." (Emphasis added.)

Most recently, in *State* v. *Brantley* (1965), 1 Ohio St. 2d 139, Chief Justice Taft, speaking for the present court in a unanimous opinion, relied on the fact that the indictment in that cause properly alleged a previous conviction. See *Carey* v. *State* (1904), 70 Ohio St. 121.

And in *State* v. *Shank* (1962), 115 Ohio App. 291, paragraph two of the syllabus provides, in pertinent part, as follows:

"An indictment under Section 2961.12, Revised Code, which describes four of the offenses specified in Section 2961.11, Revised Code, and alleges that the defendant pleaded guilty to and was sentenced on all four offenses, is insufficient, and subject to a motion to quash."

Judge Bryant, speaking for the court in *Shank, supra*, at pages 298 and 299, reasoned as follows:

"* * * The most that the indictment says is that Shank pleaded guilty to certain offenses. That, of course, is one of the steps which may form the basis for a conviction just as a verdict of guilty may be the foundation for a judgment of conviction. Both may be in proper cases refused or set aside and frequently are. The statute uses the term convictions which is not the same as a guilty plea or a guilty verdict."

See, also, *Harvey* v. *Myers*, 110 Ohio App. 469; *Ex parte*

*Briggs*, 86 Ohio App. 215; *Hamilton* v. *Russell*, 54 Ohio Law Abs. 57; *Columbus* v. *Carson*, 23 Ohio App. 299.

An allegation of a plea of guilty has been held not to be the equivalent of an allegation of a conviction. See *Smith* v. *State* (1918), 75 Fla. 468; *Timmons* v. *State* (1929), 97 Fla. 23; *Shargaa* v. *State* (Fla.), 102 So. 2d 809; *Fowler* v. *State* (1918), 14 Okla. Cr. 316, 170 P. 917; *Wright* v. *State* (1919), 16 Okla. Cr. 458, 184 P. 158; *Schooley* v. *United States* (C. C. A. 8, 1925), 4 F. 2d 767.

We note also that the General Assembly has provided, as follows, minimal standards regarding pleading a prior conviction in Section 2941.11, Revised Code:

"Whenever it is necessary to allege a *prior conviction* of the accused in an indictment or information, it is sufficient to allege that the accused was, at a certain stated time, in a certain stated court, *convicted* of a certain stated offense, giving the name of the offense, or stating the substantial elements thereof." (Emphasis added.)

The allegation in the indictment that on January 2, 1957, the appellant plead guilty to three offenses falls far short of the minimal standards set forth by the General Assembly and past judicial decisions. We think that there must be an allegation of (1) a conviction (2) at a certain stated time (3) in a certain stated court (4) of a certain stated offense, giving the name of the offense or the substantial elements thereof.

The above method of pleading three "convictions" is disturbing from another viewpoint. The habitual-criminal statutes contain two express limitations: First, the convictions relied upon by the state must be "separately prosecuted and tried," and, second, "any of such convictions which result from or are connected with the same transaction *or* result from offenses committed at the same time shall be counted for the purposes of this section as one conviction." (Emphasis added.)

An examination of the indictment in this cause fails to reveal that the crimes relied upon by the state were "separately prosecuted and tried." An examination of the record shows that the prosecutions in cases Nos. 5952, 5954 and 5955 were treated as one prosecution. Every hearing before the trial

court considered the cases simultaneously. The habitual-criminal statutes provide that upon either the third or fourth conviction for certain specified crimes the punishment for that last conviction may be increased. It is impossible to determine from the record just which case the state considers as appellant's last conviction.

The indictment in case No. 5952 charges a crime committed on May 16, 1956. The indictment in case No. 5954 charges a crime committed six days later on May 22, 1956. The indictment in case No. 5955 charges a crime that was committed twelve days earlier on May 4, 1956.

We, therefore, do not think that the crimes relied upon by the state were "separately prosecuted and tried" as required by the Habitual Criminal Act.

"The majority of the cases in which the courts have construed statutes which, in substance, provide for enhancement of the punishment of one previously convicted, hold that where there were two or more convictions on as many indictments or on two or more counts in the same indictment [resulting on the same day or term of court], only one of them may subsequently be utilized as a previous conviction within the contemplation of habitual-criminal statutes." 24 A. L. R. 2d 1247, 1262 (1952).

There remains the appellant's contention that the Court of Common Pleas was without jurisdiction to conduct a second trial of this cause, and that appellant was entitled to his absolute freedom when the Court of Appeals granted his relief in habeas corpus.

The record indicates that appellant was lawfully confined in the Ohio Penitentiary when the grand jury returned the indictment for being an habitual criminal. After trial on that indictment, the petitioner successfully attacked the validity of *that trial and no more*. All proceedings subsequent to that trial, and including the trial, were rendered null and void. Thus, petitioner was still subject to lawful confinement, his status prior to the trial. See *Henry* v. *Alvis, Warden*, 162 Ohio St. 62; *In re Knight*, 144 Ohio St. 257.

Similarly, this decision today does not purport to grant appellant his absolute freedom. He is still subject to the lawful confinement imposed upon him prior to the judicial proceedings he attacks here.

It necessarily follows that the judgment of the Common Pleas Court finding appellant to be an habitual criminal is error, and that the appellant is subject to the lawful confinement previously imposed on January 2, 1957, in cases Nos. 5952, 5954 and 5955, Common Pleas Court of Champaign County, with a reduction for all credits allowed by law.

The judgment of the Court of Appeals is, therefore, reversed, and this cause is remanded for further proceedings according to law.

*Judgment reversed.*

MATTHIAS, SCHNEIDER and BROWN, JJ., concur.

TAFT, C. J., concurring. I concur except with the holding and suggestion that a conviction for armed robbery cannot be considered under the Habitual Criminal Act as a conviction for the included offense of robbery.

ZIMMERMAN and O'NEILL, JJ., concur in the foregoing concurring opinion.